## REESE v. JAMES STEWART & CO., Inc. et al.

No. 2896. Decided Dec. 20, 1916 (162 Pac. 373).

1. WITNESSES—IMPEACHMENT—MATERIALITY. To render testimony competent to impeach a witness, it, and his testimony, must be in substantial variance with respect to a material fact. (Page 102.)

2. WITNESSES—IMPEACHMENT—MATERIALITY. Where one testifying as to the position of a servant injured by falling from a scaffold said that he saw the servant on a timber, just before he fell, and, on turning around again, saw him falling, alleged impeaching testimony of another, that such witness, after the accident, when a posed picture of the surroundings was taken, said that the servant did not stand a certain way, which he neither denied nor admitted, was not proper impeachment, especially when it was not claimed that the injured servant stood in that way. (Page 102.)

Appeal from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Action by G. M. Reese against James Stewart & Co., Incorporated, and James Stewart & Co., a copartnership.

Judgment for plaintiff, and defendants appeal.

AFFIRMED.

*King & Nibley* and *P. T. Farnsworth, Jr.,* for appellants.

*A. T. Sanford* for respondent.

STRAUP, C. J.

The plaintiff, who was in the employ of the defendants, brought this action to recover damages for personal injuries alleged to have beeen sustained while at work on a scaffold claimed to have been negligently maintained by the defendants, in that a 4x4 timber constituting a part of a floor of the scaffold, and over which the plaintiff, in the course of his work, was required to walk, was not fastened nor secured, by reason of which, when he undertook to walk over it, it turned and threw him to the ground. The plaintiff had judgment, from which the defendants appeal. There is but one question presented—a ruling by which it is claimed the appellants were denied the right to impeach one of plaintiff's witnesses.

The plaintiff, in harmony with his alleged theory, testified that as he, in the course of his employment, undertook to work upon and along the timber, and when four or five feet from one end of it, it turned and threw him to the ground. Another witness, his partner, a Mr. Bremmer, working on the scaffold a few feet above the plaintiff, testified that he saw the plaintiff go upon the timber, and when four or five feet along saw him fall; that he saw him start out upon the timber, but did not see him at the exact moment when he fell from it, when he left it, but, hearing a "flutter," looked around and saw him falling. The defendant contended that the plaintiff, just prior to his falling, talking with his partner, stood with one foot on the 4x4 and with the other on a frail board 1x8 running diagonally from the 4x4, and that the frail board broke and precipitated him below. A Mr. Emmertson, a witness for the defendants, so testified. Several days after the accident a photograph was taken of the scaffold and of the premises where the plaintiff had fallen. In taking it, Bremmer was placed on the scaffold where he claimed he was at the time the plaintiff fell, and Emmertson at the place and in the position he claimed the plaintiff was. The photograph thus shows Bremmer's position on the scaffold, and Emmertson representing the plaintiff as standing with one foot on the 4x4 and with the other on the 1x8, his arms and hands by his side and looking up towards Bremmer as though talking with him.

On cross-examination of Bremmer, he was asked by the defendants, and he answered:

"Q.  Calling your attention to the picture which has been received in evidence, Exhibit 1, do you recall that on the day this was taken, a short time before the picture was taken, Mr. Bremmer, while he was standing about where he is in the picture, had his hand up against the 4x4, or that brace, and was leaning with his hand up against either that 4x4 upright or the brace near by—not in the picture, but do you remember just a short time before the picture was taken that he was leaning with his hand up against the 4x4 or the brace?  A. You mean Mr. Emmertson?  Q.  Yes.  A.  I don't recall about that.  Q.  Don't you recall that you stated to him, 'That isn't the way he was standing,' and Emmertson answered and said, 'I know it, but they are not ready'?  A.  That conversation may have taken place, but I don't just recall it."

Then when Emmertson, the defendants' witness, was on the stand, he was asked by them:

"Q.  A few moments before this picture was taken, you were standing in about the same place as shown in the picture here, but had your arm up against either a brace or a 4x4 that was near by, and whether or not at that time and place when you were in that position Mr. Bremmer said to you in substance and effect, 'That isn't the way he stood.' "

To this question the court sustained an objection upon grounds that the question was "leading, irrelevant, immaterial, hearsay, and in no sense inpeaching," and in **1, 2** so ruling remarked that the statement was not denied by Bremmer. Complaint is made of this ruling. It is urged that it was made on the ground that Bremmer, the witness sought to be impeached, had not denied making the statement, when in fact, as it is claimed, he had not unqualifiedly admitted it, but merely stated, "That conversation may have taken place, but I don't just recall it." Upon this the rule is invoked that, if a witness does not remember having made the statement, or does neither admit nor deny having done so, or does not remember whether or not he made it, it may, nevertheless, as impeachment, be shown that the statement was made.  That that is the general rule may be conceded, for

the impeaching party is entitled to proof of the impeaching testimony as direct and clear as that which the testimony of his impeaching witness would afford. 5 Jones, Blue Book on Evidence, Section 849; 40 Cyc. 2727, 2728. But there must be a substantial variance between the statement and the testimony of the witness with respect to a material fact. Here, the witness but testified that he saw the plaintiff go upon the 4x4 about to walk across it, and when four or five feet along saw him falling; but, when asked if he saw him at the exact moment when he fell or left the timber, he replied that he did not, his attention having been momentarily diverted, but, hearing a flutter and looking around, saw him falling. He said nothing, and gave no testimony whatever, concerning the use or position of plaintiffs' hands or arms; whether they were or were not upon or against a brace or upright, or in what position they were. The question propounded to him if he, just before the picture was taken when Emmertson, about to pose as the plaintiff, was standing with his arms or hands upon or against a brace or an upright, did not say to Emmertson that that was not the position in which the plaintiff stood, in no way tended to elicit anything contradicting Bremmer's testimony. Though Bremmer had unqualifiedly admitted that he made the statement, to Emmertson, or though Emmertson had been permitted to testify that Bremmer then made such a statement to·him, yet such statement would have been consistent rather than inconsistent with Bremmer's testimony. Had Bremmer testified that the plaintiff had his hands or arms upon or against a brace, or an· upright, then his statement to Emmertson standing with his hands and arms against or upon a brace or an upright and posing as the plaintiff, that such was not plaintiff's position, might be considered at variance with his testimony. But such was not his testimony.

Let it further be observed that what divided the parties, and concerning which the evidence is in conflict, is upon what the plaintiff stood or walked at the time he fell; the defendants contending that plaintiff's fall was caused by his stepping or standing carelessly upon a frail board not intended for such purpose, the plaintiff, by the turning or the tipping

of a loose and insecure timber upon which he was required to walk. No one contended, nor do the appellants now contend, that the plaintiff had made an improper or careless use of his arms or hands, or that such a cause contributed to his falling, or that by a proper or careful use of them his falling could have been prevented. The position indicated by the question thus was not anything to the defendant's advantage. The matter, therefore, was irrelevant. And further is it irrelevant, for that neither the plaintiff nor Bremmer, nor any one, claimed that the plaintiff, prior to his fall, or at the time he fell, stood with his hands or arms upon or against a brace or an upright. The contrary admittedly is claimed by both parties, and so is the plaintiff represented in the picture with his arms and hands by his side. Then, too, the question implies that, when the statement attributed to Bremmer was made, Emmertson was then not posing for the picture, but merely, with his arms or hands leaning against a brace or an upright, was awaiting the readiness of the photographer. Still, it further is urged that the alleged statement to Emmertson contradicted Bremmer's testimony that he did not see the plaintiff at the exact moment plaintiff fell or left the timber. But the impeaching question does not point to plaintiff's position at that instance or moment, the brief interval Bremmer testified his attention was diverted from the plaintiff, and then contradicting Bremmer, plaintiff's witness, that he did not see all but only parts of the fall, by attempting to show he saw all again, was not to the defendants', but rather to the plaintiff's advantage. We are thus of the opinion that the alleged statement is no substantial variance of the testimony of the witness, and further that it relates to wholly irrelevant matter, and hence no error was committed in the ruling.

The judgment therefore is affirmed, with costs to the respondent.

FRICK and McCARTY, JJ., concur.